**ESTATE OF Thomas Angelo ALTOBELLI**

v.

**IBM INTERNATIONAL BUSINESS MACHINES CORPORATION, et al.**

Civ. No. Y–93–3930.

United States District Court, D. Maryland.

April 18, 1994.

Paul S. Lewis, Gaithersburg, MD, for plaintiff.

Jeffrey G. Huvelle, Washington, DC and Bryan D. Bolton, Baltimore, MD, for defendant IBM.

Philip J. Santa Maria, Gaithersburg, MD, for defendant Helen V. Dietsch.

JOSEPH H. YOUNG, Senior District Judge.

### MEMORANDUM OPINION

This case involves a dispute over rights to two employee benefit plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, and a life insurance plan. The plaintiff, the Estate of Thomas Angelo Altobelli, brought this action against the defendants, International Business Machines Corporation ("IBM") and the Prudential Insurance Company of America ("Prudential") claiming that it is entitled to the proceeds.

By order of interpleader dated February 7, 1994 Prudential, after depositing the proceeds of the insurance policy with the Registry of the Court, was dismissed from the case. The decedent's former wife, Helen V. Altobelli, now known as Helen V. Dietsch ("Dietsch") intervened on the ground that she is the designated beneficiary of the life insurance proceeds and employee benefit plan funds.

### I.

The decedent worked for IBM from October 13, 1969, until his death on June 14, 1993. He participated in the IBM Group Life Insurance Plan, and two IBM sponsored employee benefit plans: the IBM Retirement Plan (the "Retirement Plan") and the Tax Deferred Savings Plan ("TDSP").

Dietsch and the decedent, married on April 12, 1980, were separated on November 17, 1984 and entered into a Voluntary Separation and Property Settlement Agreement on July 5, 1985. A judgment of divorce was entered on December 27, 1985 and was incorporated into the Settlement Agreement. Paragraph 3 of Article IV of the Settlement Agreement provides:

> All of the following property is hereafter the sole and exclusive property of the Husband, and the Wife hereby waives and transfers to the Husband any interest that she may have in the property: ... (g) Husband's IBM pension and other deferred compensation plans, if any. (h) Any other personal property not specifically referred to in this Agreement which is presently in his possession, custody or control.

Article VIII states:

> 1. Subject to the provisions of this Agreement, the Parties mutually release all claims which either of them may have against the other. These are full, complete and final releases.
>
> 2. The Parties also fully, completely and finally release all rights which they may have to inherit from the other. This includes the right, if any, to administer the estate of the other.

Article IX states in pertinent part:

> Even if the Agreement is incorporated into the Judgement of Divorce, and thus con-

verted into a Court Order, it shall not be merged into that Court Order, but shall maintain its separate additional identity as a contract, breaches or defaults shall be enforceable ... through a breach of contract action for failures to comply with the contract....

Under the Retirement Plan, if the participant is married, the beneficiary is the spouse. If unmarried, the beneficiary is the person designated under the TDSP. Under the TDSP, if the participant is married, the beneficiary is the spouse, unless the participant has designated another person with the spouse's witnessed consent. If unmarried, the participant may designate a beneficiary and if the participant fails to designate one, the beneficiary is the person designated under the IBM Group Life Insurance Plan.

The decedent did not designate a beneficiary under either the Retirement Plan or the TDSP (the "Plans"). On May 19, 1980, the decedent designated Dietsch as the beneficiary of his IBM Group Life Insurance Plan and, following the divorce, did not remove her as the designated beneficiary.

IBM and Dietsch seek summary judgment claiming that ERISA preempts the divorce decree and that the settlement agreement does not relinquish Dietsch's rights to the insurance proceeds. The decedent's estate also seeks summary judgment contending that Dietsch waived any interest in the proceeds of the Plans and the insurance policy as part of her divorce settlement with the decedent.

## II.

Summary judgment is appropriate when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979).

■ IBM and Dietsch argue that ERISA preempts the divorce decree and requires IBM to pay the disputed benefits to Dietsch. In support, they cite to § 1144(a) of ERISA, which provides that Federal law shall supersede all State laws which relate to an ERISA plan. 29 U.S.C. § 1144(a).

According to IBM and Dietsch, decedent was required to comply with ERISA and the procedures stated in the TDSP to remove Dietsch as a beneficiary of employee benefit plans. Section 1104(a)(1)(D) of ERISA provides that "[a plan administrator] shall discharge his duties with respect to the plan solely in the interest of the participants and beneficiaries and ... in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D).

As noted above, under the TDSP, if the participant is unmarried at the time of death, the beneficiary shall be the person designated under the IBM Group Life Insurance Plan unless the participant has assigned ownership of such insurance. "Such designation or change of designation shall be in writing in a form satisfactory to the Plan Administrator and shall be submitted to the Company's Benefits Payroll Department and shall be effective upon receipt by that Department."

ERISA and the Plans also provide that a participant's election to change a beneficiary shall not take effect unless the spouse consents in writing, acknowledges the effect of such election and the writing is witnessed by a notary public. 29 U.S.C. § 1055(c)(2). IBM and Dietsch conclude that enforcement of the divorce decree would violate ERISA and the Plans provisions.

■ Although the Plans and ERISA specify the procedure necessary to assign benefits, those procedures need not be followed when a nonparticipant is waiving an interest in pension benefits. *Fox Valley & Vic. Const. Wkrs. Pension F. v. Brown,* 897 F.2d 275, 279–80 (7th Cir.), *cert. denied,* 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990). Moreover, neither ERISA nor the Plans require a special form to change the designation. Under ERISA and the Plans, any type of writing satisfactory to the Plan Administrator, which demonstrates the spouse's consent to the election is sufficient to change the designated beneficiary.

■ A notarized waiver in a separation agreement can qualify under ERISA as consent to a change of beneficiary if the waiver specifically refers to the spouse's employee

benefit plan. *Fox Valley,* 897 F.2d at 280; *see Metropolitan Life Ins. Co. v. Hanslip,* 939 F.2d 904, 907 (10th Cir.1991) ("we hold that absent any applicable divorce decree dictating otherwise, the beneficiary designation on file controls the disposition of this case"); *see also McMillan v. Parrott,* 913 F.2d 310, 312 (6th Cir.1990) (waiver was not effective when it did not specifically refer to the spouse's rights as beneficiary in an ERISA plan). Dietsch specifically waived her right to receive the benefits of the decedent's "IBM pension and other deferred compensation plans" in the Settlement Agreement. This is an effective waiver under ERISA and the Plans even though it does not specifically acknowledge the effect of the benefits.

This interpretation of ERISA is consistent with Congress's intent in enacting the 1984 amendments. The Senate report stated that:

> The Committee believes that present law results in inequitable treatment of participants in pension plans who die before reaching the normal retirement age under the employer's plan. Under the rules of present law, the participant's spouse may be entitled to no survivor benefits under the plan even though the participant had accrued significant vested benefits before death. Therefore, the committee believes that it is appropriate to provide automatic survivor benefits to the spouses of vested participants.

> In addition, because the committee believes that a spouse should be involved in making choices with respect to retirement income on which the spouse may also rely, the bill requires spousal consent when a participant elects not to take a survivor benefit.

Sen.Rep. No. 98–575, 1984 U.S.C.C.A.N. 2547, 2558.

Dietsch is not entitled to any proceeds from the plans. She knowingly entered into the Property Settlement Agreement which was incorporated into a divorce decree which she can not be allowed to void. Therefore, the death benefits are payable to the decedent's estate.

III.

Dietsch also contends that she is the beneficiary under the IBM Group Life Insurance Plan and that the Property Settlement Agreement does not relinquish her rights to the proceeds. Generally, divorce decrees or property settlement agreements do not effect the status and rights of the designated beneficiary. 4 Couch on Insurance 2d (Rev'd) § 27:111. However, the beneficiary's interest may be terminated by an agreement between the parties which relinquishes the spouse's interests to the insurance. *Id.* at § 27:115; *Hollaway v. Selvidge,* 219 Kan. 345, 548 P.2d 835, 840 (1976).

Separation agreements and property settlements made in good faith are construed and interpreted as contracts. *Noffsinger v. Noffsinger,* 95 Md.App. 265, 276, 620 A.2d 415, *cert. denied,* 331 Md. 197, 627 A.2d 539 (1993). Absent ambiguous language, the agreements are given their plain meaning. *Noffsinger,* 95 Md.App. at 276, 620 A.2d 415. Unless doubt about the meaning of the contract requires examination of extrinsic evidence, the construction is a question of law to be decided by the court. *Sands v. Sands,* 252 Md. 137, 143, 249 A.2d 187 (1969); *Missler v. Anne Arundel County,* 271 Md. 70, 80, 314 A.2d 451 (1974).

In Article VIII the parties agreed to mutually release all *"claims"* which "either of them may have against the other." [emphasis added]. A claim is a "demand for money or property as of right." *Blacks's Law Dictionary* 247 (6th ed. 1990); *see O'Brien v. Elder,* 250 F.2d 275, 280 (5th Cir.1957) (Rives, J. dissenting). At the time of entering the agreement, Dietsch had no vested·right as the designated beneficiary, but a revocable expectancy interest. *Chapman v. Prudential Insurance, Co.,* 215 Md. 87, 136 A.2d 752 (1957). It was an expectancy interest because the decedent had the right to transfer, assign or change the beneficiary prior to his death, and Dietsch's right to the proceeds did not vest until the death of the decedent.

In·Article IV Dietsch agreed to waive and transfer any "interest" that she had in "any other *personal property* not specifically re-

ferred to in this Agreement which is presently in [the husband's] possession, custody or *control.*" [emphasis added]. "Personal property" has been described as a right or interest a person has in movables, chattels, tangibles or intangibles. *See Elkton Electric Co. v. Perkins,* 145 Md. 224, 125 A. 851 *cert. denied,* 266 U.S. 602, 45 S.Ct. 90, 69 L.Ed. 462 (1924). Personal property includes a life insurance policy. Although, the decedent had control over the proceeds of the insurance policy at the time the parties entered the agreement, Dietsch had a mere expectancy and not an interest in the proceeds. *Wolf v. Wolf,* 147 Ind.App. 240, 259 N.E.2d 93, 96 (1970).

■ The expectancy was not included within the terms of Article VIII or IV in the settlement agreement. Because Dietsch's right to the proceeds of the policy did not vest until the death of decedent, Dietsch did not have a claim or interest that she could waive and, therefore, the provisions had no effect on the insurance policy. *See Merchants' Nat. Bank v. Hubbard,* 220 Ala. 372, 125 So. 335 (1929); *see also Cassiday v. Cassiday,* 256 Md. 5, 259 A.2d 299 (1969).

### ORDER

In accordance with the attached Memorandum it is this 18th day of April 1994, by the United States District Court for the District of Maryland, ORDERED:

1. That Plaintiff's Motion for Summary Judgment BE, and the same IS, hereby GRANTED in part and DENIED in part;

2. That Defendants' Cross Motion for Summary Judgment BE, and the same IS, hereby GRANTED in part and DENIED in part;

3. That Defendant IBM shall pay the proceeds from the ERISA Plans to the Plaintiff;

4. That the Clerk of this Court shall distribute the proceeds of the IBM Group Insurance Plan to Helen V. Dietsch; and

5. That a copy of this Memorandum and Order be mailed to counsel for the parties.